No. 14-6619

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

DAVID JOSEPH SANCHEZ, JR.,

*Petitioner-Appellant,*

v.

MARIE VARGO, WARDEN, SUSSEX II STATE PRISON,

*Respondent-Appellee.*

———————————

On Appeal from the United States District Court for the
Eastern District of Virginia, Case No. 3:13-cv-00400-REP

———————————

## BRIEF OF PETITIONER-APPELLANT
## DAVID JOSEPH SANCHEZ, JR.

———————————

CAROLYN M. SWEENEY
  *Counsel of Record*
JOSHUA C. TOLL
SARA A. SILVERSTEIN
SAMUEL E. DORAN
STEPHEN D. SALTARELLI*
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, D.C.  20006
Telephone: (202) 626-2930
Facsimile: (202) 626-3737
csweeney@kslaw.com

*Counsel for Petitioner-Appellant*

DATED: June 2, 2014

*\* Admitted only in Maryland; practice directly
supervised by principals of the firm*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................ii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES..........................................................................2

STATEMENT OF THE CASE ...................................................................3

SUMMARY OF THE ARGUMENT ........................................................5

STANDARD OF REVIEW..........................................................................8

ARGUMENT ...................................................................................................8

I.   The District Court Erred In Finding *Miller* Not
     Retroactive...............................................................................................8

     A.   It is Undisputed That *Miller* Announced A New
          Constitutional Rule................................................................8

     B.   The Supreme Court Made *Miller* Retroactive ........................9

     C.   *Miller* Satisfies The *Teague* Exceptions To
          Nonretroactivity .................................................................14

          1.   *Miller* Is A Substantive Rule ......................................14

          2.   *Miller* Is Not Less Substantive Because It
               Contains A Procedural Element ...................................22

          3.   Alternatively, *Miller* Is A Watershed
               Procedural Rule...........................................................27

II.  The Weight of Authority Supports Retroactive Application
     of *Miller* ...............................................................................................30

CONCLUSION ...............................................................................................34

REQUEST FOR ORAL ARGUMENT.....................................................35

# TABLE OF AUTHORITIES

## Cases

*Alejandro v. United States,*
No. 13-cv-4364, 2013 WL 4574066
(S.D.N.Y. Aug. 22, 2013) ................................................................. 32

*Alleyne v. United States,*
133 S. Ct. 2151 (2013) .................................................................. 25

*Ashe v. Styles,*
67 F.3d 46 (4th Cir. 1995) ................................................................ 8

*Atkins v. Virginia,*
536 U.S. 304 (2002) ........................................................................ 5

*Bonilla v. State,*
791 N.W.2d 697 (Iowa 2010) ........................................................ 19

*Commonwealth v. Cunningham,*
81 A. 3d 1 (Pa. 2013) ...................................................................... 9

*Diatchenko v. District Attorney for the Suffolk Dist.,*
1 N.E.3d 270 (Mass. 2013) .................................................... 9, 17, 31

*Eddings v. Oklahoma,*
455 U.S. 104 (1982) ...................................................................... 21

*Ex parte Maxwell,*
424 S.W.3d 66 (Tex. Crim. App. 2014) .......................................... 31

*Flowers v. Roy,*
No. 13-cv-1508, 2014 WL 1757898
(D. Minn. May 1, 2014) ................................................ 10, 11, 13, 31

*Gideon v. Wainwright,*
372 U.S. 335 (1963) ...................................................................... 28

*Graham v. Florida,*
560 U.S. 48 (2011) ...................................................... 16, 17, 18, 20

*Hill v. Snyder,*
No. 10-14568, 2013 WL 364198
(E.D. Mich. Jan 30, 2013) ................................................................ 32

*Horn v. Quarterman,*
508 F.3d 306 (5th Cir. 2007) ........................................................ 19

*In re Evans,*
449 F. App'x 284 (4th Cir. 2011) (per curiam) ................................ 19

*In re Morgan,*
713 F.3d 1365 (11th Cir. 2013) .................................................. 23, 33

*In re Sparks,*
657 F.3d 258 (5th Cir. 2011) (per curiam) ...................................... 19

*Jackson v. Norris,*
2013 Ark. 175 (2013) .................................................................... 13

*Jones v. State,*
122 So. 3d 698 (Miss. 2013) ...................................................... 9, 31

*LeCroy v. Secretary,*
421 F.3d 1237 (11th Cir. 2005) ...................................................... 19

*Lee v. Smeal,*
447 F. App'x 357 (3d Cir. 2011) ...................................................... 19

*Lockett v. Ohio,*
438 U.S. 586 (1978) ........................................................................ 21

*Miller v. Alabama,*
132 S. Ct. 2455 (2012) ......................................................... passim

*Nebraska v. Mantich,*
842 N.W.2d 716 (Neb. 2014) ...................................................... 9, 31

*Penry v. Lynaugh,*
492 U.S. 302 (1989) ........................................................ 5, 6, 9, 15

*People v. Davis,*
6 N.E.3d 709 (Ill. 2014) ................................................................ 31

*People v. Morfin,*
    981 N.E.2d 1010 (Ill. 2012) .............................................................. 9

*Pete v. United States,*
    No. 13-cv-8149, 2014 WL 88015
    (D. Ariz. Jan. 9, 2014) .................................................................... 32

*Rogers v. State,*
    267 P.3d 802 (Nev. 2011) (per curiam) ............................................ 19

*Roper v. Simmons,*
    543 U.S. 551 (2005) ................................................................. 16, 18

*Saffle v. Parks,*
    494 U.S. 484 (1990) ........................................................... passim

*Sawyer v. Smith,*
    497 U.S. 227 (1990) ........................................................................ 30

*Schriro v. Summerlin,*
    542 U.S. 348 (2004) ......................................................... 15, 26, 27

*State v. Ragland,*
    836 N.W.2d 107 (Iowa 2013) ............................................ 12, 22, 27, 31

*Sumner v. Schuman,*
    483 U.S. 66 (1987) ......................................................................... 21

*Teague v. Lane,*
    489 U.S. 288 (1989) ........................................................... passim

*Tyler v. Cain,*
    533 U.S. 656 (2001) ................................................................... 9, 14

*Whorton v. Bockting,*
    549 U.S. 406 (2007) ...................................................... 27, 28, 29, 30

*Williams v. Virgin Islands,*
    No. 2012-28, 2013 WL 5913305
    (V.I. Nov. 5, 2013)......................................................................... 31

*Witherspoon v. Illinois,*
391 U.S. 510 (1968) ........................................................................28

*Woodson v. North Carolina,*
428 U.S. 280 (1976) ..................................................................20, 21

**Statutes**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 2244 ...........................................................................1, 4

28 U.S.C. § 2254 .........................................................................1, 31

Va. Code § 18.2-10.............................................................................3

Va. Code § 53.1-165.1........................................................................3

**Legislative Materials**

H.B. 152, 2013 Leg., Reg. Sess. (La. 2013) .............................................26

H.B. 1993, 89th Gen. Assemb., Reg. Sess. (Ark. 2013) ..........................26

H.B. 2116, 27th Leg., Reg. Sess. (Haw. 2014) .......................................26

H.B. 23, 62d Leg., 2013 General Sess. (Wyo. 2013)...............................26

Legis. B. 44, 103d Leg., 1st Sess. (Neb. 2013) .......................................26

S.B. 122, 2014 Gen. Assemb., Reg. Sess. (Va. 2014) .............................26

S.B. 125, 2014 Gen. Assemb., Reg. Sess. (Va. 2014) .............................26

S.B. 142, 2014 Gen. Assemb., Reg. Sess. (Va 2014) ..............................26

S.B. 2, 83d Leg., 2d Sess. (Tex. 2013) ..................................................26

S.B. 319, 97th Leg., Reg. Sess. 2014 (Mich. 2014)................................26

S.B. 39, 2013 Leg., 88th Sess. (S.D. 2013) ...........................................26

S.B. 5064, 63d Leg., 2014 Reg. Sess. (Wash. 2014) ................................26

S.B. 635, Gen. Assemb., 2011-2012 Sess. (N.C. 2012) ............................26

S.B. 808, 2013 Gen. Assemb., Reg. Sess. (Va. 2013) ..............................26

S.B. 809, 2013 Gen. Assemb., Reg. Sess. (Va. 2013) ..............................26

S.B. 850, 2011-2012 Gen. Assemb., Reg. Sess. (Pa. 2012) ......................26

S.B. 9, 147th Gen. Assemb. (Del. 2013) ..................................................26

## Other Authorities

Brief for the United States,
*Johnson v. United States*,
No. 12-3744 (8th Cir. Feb. 22, 2013) ..................................................33

Brief for the United States,
*Stone v. United States*,
No. 13-1486 (2d Cir. May 30, 2013) ...................................................33

Brief for the United States,
*Williams v. United States*,
No. 13-1731 (8th Cir. May 9, 2013) ....................................................33

Order,
*United States v. Lawrence*,
No. 92-cr-35, (N.D.N.Y. July 10, 2013) .............................................32

## JURISDICTIONAL STATEMENT

David Joseph Sanchez, Jr. appeals a final judgment of the United States District Court for the Eastern District of Virginia entered on March 21, 2014 denying his Petition for a Writ of Habeas Corpus. J.A. 517, 496. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2254. The district court granted a Certificate of Appealability in its March 21 order, and on April 16, 2014, the court corrected its Certificate of Appealability to specify the issue on which it was granted: whether the rule announced by the Supreme Court in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), satisfies 28 U.S.C. § 2244(d)(1)(C). J.A. 523, 521. Mr. Sanchez timely filed a notice of appeal in the district court on April 18, 2014. J.A. 524. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2254.

## STATEMENT OF ISSUES

Does the rule the Supreme Court announced in *Miller*—that a mandatory sentence of life without parole imposed on a juvenile offender for a homicide conviction violates the Eighth Amendment— retroactively apply to a person suffering such a punishment who seeks relief on collateral review?

## STATEMENT OF THE CASE

Petitioner David Joseph Sanchez, Jr. was sentenced to mandatory life in prison without the possibility of parole for a crime he committed when he was seventeen years old.  At the time of Mr. Sanchez's 1999 capital murder conviction in Virginia, the judge who sentenced Mr. Sanchez was authorized by statute to either impose capital punishment or sentence him to life in prison without the possibility of parole.  VA. CODE §§ 18.2-10(a); 53.1-165.1.  Once the sentencing judge determined that Mr. Sanchez was not to receive the death penalty, the only other option available was life without parole; the judge was unable to consider any mitigating factors in order to impose any sentence less than life without parole, including those factors stemming from Mr. Sanchez's youth.  *See id.*

On June 25, 2012, the Supreme Court issued its decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), and held that a mandatory sentence of life without parole is unconstitutional when imposed on a juvenile offender.  Mr. Sanchez received just such a sentence.  Accordingly, he filed a timely Petition for Habeas Corpus ("Petition") in the Eastern District of Virginia on June 24, 2013, seeking relief from his current

3

sentence of mandatory life without parole under *Miller*.  J.A. 5.  *Miller* not only declared imposing a mandatory sentence of life without parole on a juvenile homicide offender unconstitutional as cruel and unusual punishment in violation of the Eighth Amendment, it also required that a sentencer take into consideration the hallmark attributes of youth when contemplating a sentence of life without parole.

On March 21, 2014, the district court dismissed Mr. Sanchez's Petition.  J.A. 517.  The district court held that *Miller* does not apply retroactively to cases on collateral review; therefore, the Petition was deemed untimely under 28 U.S.C. § 2244(d)(1)(C).  J.A. 516.

The district court issued a Certificate of Appealability in its March 21, 2014 order and corrected it in an order issued on April 16, 2014, specifying that the Certificate of Appealability was limited to whether *Miller* applies retroactively to cases on collateral review under 28 U.S.C. § 2244(d)(1)(C).  J.A. 517, 523.  Mr. Sanchez filed a timely Notice of Appeal on April 18, 2014.  J.A. 524.

## SUMMARY OF THE ARGUMENT

Mr. Sanchez received a mandatory sentence of life without parole for his conviction for a murder committed when he was a juvenile. The Supreme Court held in *Miller v. Alabama* that imposing a mandatory sentence of life without parole on a juvenile offender is unconstitutional. Mr. Sanchez seeks review of his unconstitutional sentence. The Commonwealth of Virginia asserts, and the district court decided, that because Mr. Sanchez's conviction and sentence became final prior to the Supreme Court's ruling, he must continue to serve that unconstitutional sentence until his death.

There is no dispute that *Miller* announced a new constitutional rule. When the Supreme Court announces a new rule, that rule applies retroactively to cases on collateral review if the Court applies it to a case on collateral review. *Teague v. Lane*, 489 U.S. 288, 300 (1989); *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002). The Court applied the *Miller* rule to Kuntrell Jackson on collateral review, thus answering the question of whether *Miller* is retroactive in the affirmative. *Miller*, 132 S. Ct. at 2475.

5

Even if the Court had not applied the *Miller* rule to Mr. Jackson on collateral review, it would still be retroactive under the exceptions to *Teague*'s general rule of nonretroactivity. First, *Miller* is a substantive rule because it prohibits a mandatory sentence of life without parole (category of punishment) for juveniles (a class of defendants) because of the characteristics unique to children (status). *Saffle v. Parks*, 494 U.S. 484, 494–95 (1990) (citing *Penry*, 492 U.S. at 330). The fact that *Miller* contains a "procedural element" does not change that it is a substantive rule. *Miller*'s procedural element is a byproduct of the underlying substantively-changed law. *Miller* does not merely regulate the manner in which culpability is determined; rather, it expands the range of sentences available to a court sentencing a juvenile homicide offender to necessarily include non-mandatory-life-without-parole sentences, and it creates a wholly new requirement that requires courts to determine a juvenile offender's culpability during sentencing. In the alternative, *Miller* announces a watershed procedural rule, and therefore must be applied retroactively. *Miller* both eliminated the intolerably high risk of a constitutionally-impermissible sentence being applied to juveniles

6

and fundamentally changed the core requirements of sentencing juveniles.

Additionally, the weight of authority from courts that have examined this issue supports a finding that *Miller* is retroactively applicable to cases on collateral review. To deny Mr. Sanchez the same relief that is being granted to similarly-situated prisoners in the majority of other states would place Virginia's interpretation of the law out of step with other states and in opposition to the federal government's interpretation, creating an unnecessary division in the interpretation of Supreme Court law.

For these reasons, Mr. Sanchez's Petition should be granted and his case remanded to Virginia state court for resentencing consistent with *Miller*.

## STANDARD OF REVIEW

This court reviews de novo the denial of the writ of habeas corpus. *Ashe v. Styles*, 67 F.3d 46, 50 (4th Cir. 1995).

## ARGUMENT

### I.    The District Court Erred In Finding *Miller* Not Retroactive

#### A.    It is Undisputed That *Miller* Announced A New Constitutional Rule

The threshold question for any retroactivity analysis is whether the Supreme Court issued a "new" rule.  Under *Teague v. Lane*, a rule announced by the Supreme Court is "new" if it is not "dictated by precedent."  489 U.S. 288, 301 (1989).

It is undisputed that the Supreme Court issued such a new rule in *Miller v. Alabama*, when it held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without [the] possibility of parole for juvenile offenders."  132 S. Ct. 2455, 2469 (2012).  Both parties agree that *Miller* announced a new rule, and courts around the country (including the district court below) have reached the same conclusion.   J.A. 175 ("[Mr. Sanchez's] claim rests on the new procedural rule announced in *Miller v. Alabama*"); J.A. 503 ("[T]here is general judicial agreement that *Miller* established a new rule of

constitutional law"); *see, e.g.*, *Nebraska v. Mantich*, 842 N.W.2d 716, 724 (Neb. 2014); *People v. Morfin*, 981 N.E.2d 1010, 1019 (Ill. 2012); *Jones v. State*, 122 So. 3d 698, 702 (Miss. 2013); *Diatchenko v. District Attorney for the Suffolk Dist.*, 1 N.E.3d 270, 279 (Mass. 2013); *Commonwealth v. Cunningham*, 81 A. 3d 1, 10 (Pa. 2013).

### B.    The Supreme Court Made *Miller* Retroactive

One method through which a newly-announced rule may be made retroactive is by action of the Supreme Court. *Tyler v. Cain*, 533 U.S. 656, 663 (2001). Specifically, when the Supreme Court announces a rule in a case on collateral review, that rule is retroactive. *Teague*, 489 U.S. at 300. Additionally, when the Supreme Court *applies* a new rule to a case on collateral review, even if the rule was not announced in that case, that rule is also retroactive. *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989) ("new rules will not be *applied or* announced in cases on collateral review unless they fall into one of two exceptions [announced in *Teague*]" (emphasis added)). "[O]nce a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Teague*, 489 U.S. at 300. Indeed, "habeas corpus cannot be used as a

vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated." *Id.* at 316.

The Supreme Court's application of the new *Miller* rule to Mr. Jackson on collateral review is dispositive of the question of *Miller*'s retroactivity. The Supreme Court decision referred to, both commonly and herein, as *Miller* is actually the opinion issued in two cases consolidated by the Court: *Miller v. Alabama* and *Jackson v. Hobbs*. *See Miller*, 132 S. Ct. at 2463 ("We granted certiorari in both [Mr. Miller's and Mr. Jackson's] cases, and now reverse" (citations omitted)); *id.* at 2460 ("The *two* 14-year-old offenders in *these cases* . . . ." (emphasis added)); *id.* at 2475 ("We accordingly reverse the judgments of the Arkansas Supreme Court and Alabama Court of Criminal Appeals and remand the cases for further proceedings not inconsistent with this opinion."); *see also Flowers v. Roy*, No. 13-cv-1508, 2014 WL 1757898, at *6 (D. Minn. May 1, 2014). By announcing the new constitutional rule prohibiting sentences of mandatory life without parole imposed on juvenile offenders in the consolidated cases of *Miller*

and *Jackson*, and applying the rule both to Mr. Miller (whose case was on direct appeal) and to Mr. Jackson (whose case was on appeal from the denial of a habeas petition), the Supreme Court made the new rule retroactive. *See Teague*, 489 U.S. at 300; s*ee also Flowers*, 2014 WL 1757898, at *6. "[E]venhanded justice" requires this result; only new rules that satisfy a *Teague* exception to the general rule of nonretroactivity are announced or applied by the Supreme Court on collateral review. *Teague*, 489 U.S. at 300; *see Saffle v. Parks*, 494 U.S. 484, 487–88 (1990); *see also Flowers*, 2014 WL 1757898, at *6 ("It is enough to decide the question of *Miller* retroactivity, then, to note that in that case, the Supreme Court announced a new constitutional rule in a habeas proceeding, applied it to the habeas petitioner who sought it, and granted him the same relief that [Petitioner] seeks here.").

The district court below found that the Court's application of the new rule to Mr. Jackson did not make the new rule retroactive because in *Jackson* the state failed to argue that retroactive application was barred by the general rule of nonretroactivity. This, the court reasoned, indicates that Mr. Jackson and Mr. Sanchez are not similarly situated;

therefore, the application of the *Miller* rule to Mr. Jackson did not indicate that the Court found *Miller* retroactive. J.A. 514–15.

The district court erred in its reasoning and conclusion. Mr. Sanchez and Mr. Jackson are similarly situated because both individuals exhausted their direct appeals and sought post-conviction relief through collateral review. In *Jackson*, at the time the state argued its case before the Supreme Court the new *Miller* rule had not yet been announced. Therefore, there was no opportunity for the state to argue that the new rule would not meet *Teague*'s exceptions. Moreover, the state's failure to raise the issue of *Teague* in *Jackson* does not change the fact that the Supreme Court actually applied the *Miller* rule to Mr. Jackson, whose case was before it on collateral review. Because the Court has already applied the *Miller* rule to a petitioner on collateral review, that rule must be applied to all other cases on collateral review that raise the same issue. *Teague*, 489 U.S. at 316.

If the Supreme Court had not intended the *Miller* rule to apply retroactively, it could have easily accomplished this by resolving Mr. Jackson's case in another manner. *See, e.g.*, *State v. Ragland*, 836 N.W.2d 107, 116 (Iowa 2013) ("There would have been no reason" for

the Supreme Court to apply the *Miller* rule to Jackson "if it did not view the *Miller* rule as applying retroactively to cases on collateral review."). For example, it could have dismissed Mr. Jackson's case and found that certiorari had been improvidently granted.  It also could have raised *Teague* and addressed the threshold issue of retroactivity *sua sponte*.  It did neither.  Instead of disposing of Mr. Jackson's case in a manner that would have avoided the issue of how *Teague* applied, the Court reversed the Arkansas court's denial of habeas relief and remanded Mr. Jackson's case for further proceedings consistent with *Miller*.  *Miller*, 132 S. Ct. at 2475, *remanded for resentencing*, *Jackson v. Norris*, 2013 Ark. 175, 9 (2013).  The Court chose to resolve Mr. Jackson's case by applying the newly-announced *Miller* rule and, in doing so, the Court made the new rule retroactive.

For this reason, it is unnecessary to independently analyze how the two *Teague* exceptions apply to the rule articulated in *Miller*.  "[B]y virtue of announcing and applying a new constitutional rule in a habeas proceeding like *Jackson*, the Supreme Court has already made the *Miller* rule retroactive to cases on collateral review like [Petitioner's]." *Flowers*, 2014 WL 1757898, at *13.  The Supreme Court did not need to

13

explicitly direct lower courts to apply *Miller* retroactively to cases on collateral review; rather, its "holdings logically permit no other conclusion . . . ." *See Tyler*, 533 U.S. at 669 (O'Connor, J., concurring).

### C. *Miller* Satisfies The *Teague* Exceptions To Nonretroactivity

Even were this Court to disagree that the Supreme Court has already resolved *Miller*'s retroactivity, it is clear that *Miller* satisfies the *Teague* exceptions to nonretroactivity. As a general matter, new rules announced by the Court are not "applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. The Court has identified two exceptions to this general principle: a new constitutional rule may be applied to finalized convictions when the new rule is either a new substantive rule or a new watershed rule of criminal procedure that implicates the "fundamental fairness and accuracy of the criminal proceeding." *Parks*, 494 U.S. at 495.

#### 1. *Miller* Is A Substantive Rule

A new substantive constitutional rule announced by the Supreme Court applies retroactively if that rule "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense."

*Penry*, 492 U.S. at 330; *see also Parks*, 494 U.S. at 494. *Miller* squarely fits this description—it prohibits a mandatory sentence of life without parole (category of punishment) for juveniles (a class of defendants) because of the characteristics unique to children (status). *See Parks*, 494 U.S. at 494–95 (citing *Penry*, 492 U.S. at 330).

New substantive rules are retroactively applicable to finalized convictions because they "necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose on him." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (internal quotation marks omitted). The Court's categorical rejection in *Miller* of schemes imposing mandatory sentences of life without parole on juvenile offenders means that Mr. Sanchez today serves an unconstitutional sentence that "the law cannot impose on him." *Id.*; *Miller*, 132 S. Ct. at 2469, 2475. Underlying the Court's decision in *Miller* is the recognition that children are categorically less deserving of irrevocable penalties, a determination first reached in *Roper v. Simmons* and reaffirmed in both *Graham v. Florida* and *Miller*. In *Roper*, the Supreme Court cited three characteristics distinguishing the culpability of children from that of adults: juveniles (1) exhibit a "lack of maturity and an underdeveloped

15

sense of responsibility;" (2) "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure;" and (3) possess characters that are "not as well formed." *Roper v. Simmons*, 543 U.S. 551, 569–70 (2005) (internal quotation marks omitted). In *Graham*, the Court explained the significance of these characteristics, finding that "[j]uveniles are more capable of change than are adults, . . . their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults[,] . . . [and] a greater possibility exists that a minor's character deficiencies will be reformed." *Graham v. Florida*, 560 U.S. 48, 68 (2011) (quoting *Roper*, 543 U.S. at 570).

In *Miller*, the Court found that the sentence of mandatory life without parole "by [its] nature, preclude[s] a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Miller*, 132 S. Ct. at 2467. Those characteristics and circumstances include youth's "hallmark features— among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 2467, 2468. Moreover, when a mandatory sentence of life without parole is imposed equally upon adult and child

homicide offenders—regardless of their differences—although they receive the same nominal sentence, children necessarily receive "a greater sentence than those adults will serve." *Id.* at 2468; *id.* at 2466 ("[T]his lengthiest possible incarceration is an 'especially harsh punishment for a juvenile,' because he will almost inevitably serve 'more years and a greater percentage of his life in prison than an adult offender.'" (quoting *Graham*, 130 S. Ct. at 2028)).

This results in a situation in which child offenders—who possess reduced moral culpability and greater capacity for change—are given harsher sentences than adult offenders as punishment for similar homicide offenses. *Id.* at 2468 & n.7. In requiring a court to consider "how children are different," the *Miller* Court determined that there is a substantive difference between a sentence of life without parole and a *mandatory* sentence of life without parole. *Id.* at 2469. By holding that the latter may not be imposed on juvenile offenders in any circumstance, the *Miller* Court announced a substantive rule. *See Parks*, 494 U.S. at 494; *Diatchenko*, 1 N.E.3d at 281.

In addition to the line of precedent discussed above that establishes that children, who are constitutionally different than adults

17

for the purpose of sentencing, are less deserving of the most severe punishments, the *Miller* rule is also based on precedent examining individualized sentencing in the context of the death penalty. 132 S. Ct. at 2463–64. Each case comprising the first line of precedent has been applied retroactively. The second line of cases established a set of clearly substantive rules that developed requirements for individualized sentencing prior to the imposition of the death penalty.

As discussed above, the first line of cases the Court relied on in its *Miller* analysis includes *Roper* and *Graham*. Beginning in *Roper*—where the Court held that it was a violation of the Eighth Amendment to impose the death penalty on juvenile offenders—the Supreme Court has consistently separated children and adults for the purpose of sentencing analysis in order to comport with multi-disciplinary research describing categorical differences between juvenile and adult offenders probative to culpability. *See id.* at 2464 (citing *Roper*, 543 U.S. at 569). *Graham* reaffirmed this analytical framework, holding that sentencing a juvenile offender to life without parole for a non-homicide offense violates the Eighth Amendment. *See id.* (citing *Graham*, 560 U.S. at 67). *Miller* is the culmination of this line of jurisprudence, relying on an

increasingly-developed body of research to draw conclusions as to the length of punishment that may be constitutionally imposed on juveniles.

Both *Roper* and *Graham* have been recognized as retroactively applicable on collateral review. *Roper* was announced on collateral review; accordingly, courts have recognized that it is retroactively applicable. *Lee v. Smeal*, 447 F. App'x 357, 359 n.2 (3d Cir. 2011); *Horn v. Quarterman*, 508 F.3d 306, 308 (5th Cir. 2007); *LeCroy v. Secretary*, 421 F.3d 1237, 1239 (11th Cir. 2005). *Graham* has also been recognized as retroactive on the basis that it announces a new substantive rule. *See, e.g.*, *In re Sparks*, 657 F.3d 258, 262 (5th Cir. 2011) (per curiam) (holding *Graham* retroactive on collateral review); *Bonilla v. State*, 791 N.W.2d 697, 700–01 (Iowa 2010) (same); *In re Evans*, 449 F. App'x 284 (4th Cir. 2011) (per curiam) (noting that the Government acknowledged that *Graham* applies retroactively on collateral review); *Rogers v. State*, 267 P.3d 802, 804 (Nev. 2011) (per curiam) (same).

The Court also found relevant a separate line of precedent demanding individualized sentencing prior to the imposition of the death penalty. *Miller*, 132 S. Ct. at 2460 (finding that sentencing

schemes that mandate a sentence of life without parole for juvenile homicide offenders "run[] afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties."). The Court relied on this precedent by analogizing the sentence of life without parole to capital punishment. *Graham*, 560 U.S. at 90. Just as the death penalty is the harshest sentence an adult offender can receive, the Court reasoned that life without parole is the harshest sentence a juvenile offender may constitutionally receive; both require a sentencer to consider the facts of the particular case before imposition of that penalty. *Miller*, 132 S. Ct. at 2648. ("Individualized sentencing cases . . . teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult.").

The Supreme Court has long recognized the constitutional need for individualized sentencing considerations in the death penalty context. The *Miller* Court's analysis of this line of cases starts with *Woodson v. North Carolina*, 428 U.S. 280 (1976), in which the Court described the flaws of a mandatory sentencing scheme in the death penalty context, explaining that the mandatory nature of that sentence was unconstitutional because "it gave no significance to 'the character

and record of the individual offender or the circumstances' of the offense, and 'excluded from consideration . . . the possibility of compassionate or mitigating factors.'" *Miller*, 132 S. Ct. at 2467 (quoting *Woodson*, 428 U.S. at 304).

*Woodson* was decided in a time period during which the landscape of death penalty jurisprudence was in flux.  At the time, few to no death penalty sentences imposed under a mandatory scheme had been finalized when the decision was issued, leaving retroactive application unnecessary.  There is no reason to believe the rule it announced is anything but substantive, especially because numerous cases premised on *Woodson* have been applied retroactively to cases on collateral review.  *See, e.g.*, *Sumner v. Schuman*, 483 U.S. 66, 74–76 (1987) (relying on *Woodson* to prohibit mandatory death penalty for murders committed while already serving life without parole, announced on collateral review, and recognized as retroactively applicable); *Eddings v. Oklahoma*, 455 U.S. 104, 110–17 (1982) (clarifying that state courts must weigh all mitigating factors against evidence of aggravating circumstances and subsequently applied retroactively); *Lockett v. Ohio*, 438 U.S. 586, 596–609 (1978) (applying *Woodson* to require that judges

and juries consider all mitigating evidence and found retroactive by courts of appeal). Each of these cases announced a rule mandating that courts consider characteristics pertinent to the crime or offender at the sentencing stage, and each has been applied retroactively.

The rule in *Miller* is substantially similar to each of the rules announced in the previous line of cases in that it creates a substantive change in the law and should be applied retroactively. *See, e.g.*, *Ragland*, 836 N.W.2d at 115–17 (relying on the retroactivity of *Miller*'s underpinnings to determine *Miller* should be applied retroactively). In *Miller*, the Court noted that "the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Miller*, 132 S. Ct. at 2464. It should also lead this Court to conclude that, like its underpinnings, *Miller* is retroactively applicable to cases on collateral review.

### 2. *Miller* Is Not Less Substantive Because It Contains A Procedural Element

*Miller* is not rendered any less substantive a rule simply because it contains a "procedural element." One of the reasons the district court identified as justifying the dismissal of Mr. Sanchez's Petition was that

22

the *Miller* rule included an element of procedure and could therefore not be substantive. The district court relied heavily on the Eleventh Circuit's reasoning in *In re Morgan*, which buttressed its analysis with language from *Summerlin* and *Penry*. The district court examined language in *Penry* indicating that a rule is substantive if the new rule applies only where a class cannot be subjected to a punishment "regardless of the procedures followed." J.A. 509 (quoting *In re Morgan*, 713 F.3d 1365, 1368 (11th Cir. 2013)). It then turned to *Summerlin*'s statement that "rules that regulate only the manner of determining the defendant's culpability are procedural." J.A. 509–10 (quoting *In re Morgan*, 713 F.3d at 1368). From these statements, the court concluded that *Miller* announced a procedural rule because it only "adds a procedural safeguard that must be followed prior to imposition of [a life] sentence." J.A. 510 (internal quotation marks omitted).

Indeed, in *Miller*, the Supreme Court states that its decision "mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." 132 S. Ct. at 2471. The district court misconstrues the significance of this language. The court's characterization shows its

fundamental misunderstanding of the holding in *Miller*. *Miller* not only categorically bans a sentence from being imposed on a class of people—it is now unconstitutional to sentence a juvenile offender to mandatory life without parole—but it also *requires* a sentencer, for the first time, *to determine* the defendant's culpability when imposing a sentence. *Id.* at 2469. *Summerlin* and *Penry*, the cases the district court relied on to find that *Miller* announced a procedural rule, were both decided against a legal backdrop in which individual consideration prior to imposition of the harshest possible constitutional sentence was *already* required—the issue in each case involved *how* such individual consideration was implemented. In the juvenile offender context, *Miller* created this individualized consideration requirement; it did not exist prior to *Miller*. Critically, *Miller* mandates that courts contemplating the imposition of the harshest possible punishment on a juvenile offender *determine* culpability in sentencing, thereby requiring the individualized consideration adults are already afforded when facing the harshest available punishment (death). This procedural element is required only because of the fundamental change in the underlying substantive law. Now a sentencer *must* consider mitigating factors

prior to imposing a sentence of life without parole—which was both unnecessary and prohibited when the sentence was mandatory. *Id.*

*Miller*'s categorical ban on mandatory sentences of life without parole for juvenile offenders necessarily requires a court to consider a different punishment than was previously available for the same act. The Supreme Court has clearly stated that a criminal sentence cannot be treated as a matter of procedure; the proscribed range of sentences permitted by the law for any offense is part of the underlying criminal offense. *Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013) ("[T]he legally prescribed range [of sentences] is the penalty affixed to the crime . . . [so] it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense"). In the 28 states that permitted a mandatory sentence of life without parole to be imposed on juveniles before *Miller* was decided, *Miller* not only categorically banned a mandatory sentence of life without parole for a category of people based on status, but also necessarily required other, lower sentences be made available to judges, altering the substance of the law itself. *See* 132 S. Ct. at 2469. Illustrating this point, at least 12 of the 28 state legislatures whose laws were affected

by *Miller* have enacted statutes correcting juvenile sentencing schemes in the wake that decision. *See* H.B. 1993, 89th Gen. Assemb., Reg. Sess. (Ark. 2013); S.B. 9, 147th Gen. Assemb. (Del. 2013); H.B. 2116, 27th Leg., Reg. Sess. (Haw. 2014); H.B. 152, 2013 Leg., Reg. Sess. (La. 2013); S.B. 319, 97th Leg., Reg. Sess. 2014 (Mich. 2014); Legis. B. 44, 103d Leg., 1st Sess. (Neb. 2013); S.B. 635, Gen. Assemb., 2011-2012 Sess. (N.C. 2012); S.B. 850, 2011-2012 Gen. Assemb., Reg. Sess. (Pa. 2012); S.B. 39, 2013 Leg., 88th Sess. (S.D. 2013); S.B. 2, 83d Leg., 2d Sess. (Tex. 2013); S.B. 5064, 63d Leg., 2014 Reg. Sess. (Wash. 2014); H.B. 23, 62d Leg., 2013 General Sess. (Wyo. 2013). Similar legislation has been introduced repeatedly in Virginia; however, it has yet to be passed in the legislature. *See* S.B. 808, 2013 Gen. Assemb., Reg. Sess. (Va. 2013); S.B. 809, 2013 Gen. Assemb., Reg. Sess. (Va. 2013); S.B. 125, 2014 Gen. Assemb., Reg. Sess. (Va. 2014); S.B. 122, 2014 Gen. Assemb., Reg. Sess. (Va. 2014); S.B. 142, 2014 Gen. Assemb., Reg. Sess. (Va 2014).

A juvenile offender currently serving a mandatory sentence of life without parole, like Mr. Sanchez, is necessarily serving "a punishment that the law cannot impose upon him." *Summerlin*, 542 U.S. at 352. This injustice cannot stand merely because *Miller* contains procedural

language stemming from its overhaul of the substantive sentencing law. *See, e.g.*, *Ragland*, 836 N.W.2d at 115–16 (noting that *Miller*'s procedural element stems from the fact it substantively changed the law). "From a broad perspective, *Miller* does mandate a new procedure. Yet, the procedural rule for [an individualized sentencing] hearing is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing." *Id.* at 115.

### 3. Alternatively, *Miller* Is A Watershed Procedural Rule

If the rule announced in *Miller* is not found to be substantive, it nonetheless applies retroactively to Mr. Sanchez because it is a "watershed rule[] of criminal procedure." *See Teague*, 489 U.S. at 311 (O'Connor, J., concurring); *see also Whorton v. Bockting*, 549 U.S. 406, 418 (2007). Indeed, *Miller* has "effected a profound and sweeping change" on how juveniles are sentenced. *See Whorton*, 549 U.S. at 421 (internal quotation marks omitted). "In order to qualify as watershed, a new rule must meet two requirements." *Id.* at 418. First, the rule must be necessary to prevent an "impermissibly large risk" of an inaccurate criminal proceeding. *Summerlin*, 542 U.S. at 356; *see Whorton*, 549 U.S. at 418; *Parks*, 494 U.S. at 495 (watershed rules implicate "the

fundamental fairness and accuracy of the criminal proceeding"). "Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 418 (internal quotation marks omitted). *Miller* meets both of these requirements.

The new rule announced in *Miller* meets the first requirement of preventing an "impermissibly large risk" of an inaccurate criminal proceeding by announcing a "foundational principle" with respect to the sentencing of juveniles to life without parole. The Supreme Court has recognized that sentencing is a critical aspect of the trial process that directly affects the accuracy of the trial. *See, e.g.*, *Witherspoon v. Illinois*, 391 U.S. 510, 523 n.22 (1968). In *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Supreme Court announced a new rule requiring states to provide counsel to indigent defendants. This new rule eliminated the "intolerably high" risk of an unreliable verdict. *Whorton*, 549 U.S. at 419. Similarly, in *Miller*, the Supreme Court announced a new rule that eliminated the intolerably high risk of imposing an inappropriate and disproportionate sentence in violation of the Eighth Amendment. The Supreme Court stated that it would be rare that life

imprisonment without the possibility of parole would be the appropriate sentence for a juvenile. 132 S. Ct. at 2469 ("[W]e think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."). The Court also required that certain factors be considered prior to imposing a sentence of life without parole to prevent the impermissibly large risk of inaccurate sentencing in violation of the Eighth Amendment. *See id.* (stating that sentencing juveniles to "that harshest prison sentence" while ignoring their youth and its attendant qualities "poses too great a risk of disproportionate punishment"). Because the court that sentenced Mr. Sanchez did not consider such factors or have the ability to impose a sentence lesser than life without parole, there is near certainty that he has inappropriately received the harshest sentence possible. *See Id.* at 2464, 2469.

The new rule announced in *Miller* meets the second requirement—it alters our understanding of the bedrock procedural elements which are essential to a fair criminal proceeding. "[I]n order to meet this requirement, a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 421. Indeed, the *Miller*

rule possesses both "primacy and centrality." *See id.* (internal quotation marks omitted). *Miller* profoundly changed the core requirements of sentencing juveniles and found the sentencing schemes of 28 states and the Federal Criminal Code unconstitutional. The invalidation of statutes enacted by the majority of states and by Congress indicates that *Miller* "alter[s] our understanding" of the substantive elements required to constitute a constitutional criminal proceeding, *Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (internal quotation marks omitted), and indicates that *Miller* has "effected a profound and sweeping change" in how juvenile offenders must be sentenced, *Whorton*, 549 U.S. at 421 (internal quotation marks omitted). *Miller* ensures the accuracy and proportionality of sentences imposed on juveniles. 132 S. Ct. at 2469. Indeed, the new rule implicates a basic precept of justice and constitutes a "previously unrecognized bedrock procedural element," as required by *Whorton*. 549 U.S. at 421.

## II. The Weight of Authority Supports Retroactive Application of *Miller*

In addition to the fact that (1) the Supreme Court has already made *Miller* retroactive and (2) the *Miller* rule is retroactive because it satisfies the *Teague* exceptions, a number of courts have found *Miller*

retroactively applicable on collateral review. This case sits in a different procedural posture than similar cases in other states; most state conviction cases involving the retroactivity of *Miller* are currently in the state system in postconviction review. Because Virginia has no state procedure through which Mr. Sanchez could raise his claim, he and other Virginia state prisoners are seeking review in federal court under 28 U.S.C. § 2254. Given this background, the decisions of various state courts are highly relevant and can provide a path for this Court to follow. The criminal state high courts of Texas, Massachusetts, Illinois, Iowa, Mississippi, and Nebraska have all found *Miller* to be retroactive on collateral review. *People v. Davis*, 6 N.E.3d 709, 722–23 (Ill. 2014); *Ex parte Maxwell*, 424 S.W.3d 66, 75–76 (Tex. Crim. App. 2014); *Mantich*, 842 N.W.2d at 731; *Williams v. Virgin Islands*, No. 2012-28, 2013 WL 5913305, at *8 (V.I. Nov. 5, 2013); *Diatchenko*, 1 N.E.3d at 281; *Ragland*, 836 N.W.2d at 116; *Jones*, 122 So. 3d at 702.

Federal courts have also found *Miller* retroactive. The District of Minnesota, considering *Miller* retroactivity arising from a state conviction, found that *Miller* is retroactive. *Flowers*, 2014 WL 1757898, at *7. Another federal district court stemming from a state conviction

stated in dicta that, were the issue before it, it would find *Miller* retroactive to cases on collateral review. *Hill v. Snyder*, No. 10-14568, 2013 WL 364198, at *2 n.2 (E.D. Mich. Jan 30, 2013). Additionally, when considering *Miller* petitions from federal prisoners, district courts have routinely granted petitioners' resentencing hearings, reasoning that *Miller* announced a new rule. *Alejandro v. United States*, No. 13-cv-4364, 2013 WL 4574066, at *1–*2 (S.D.N.Y. Aug. 22, 2013) (finding the *Miller* rule both substantive and retroactively applicable); *Pete v. United States*, No. 13-cv-8149, 2014 WL 88015, at *1 (D. Ariz. Jan. 9, 2014) (granting unopposed resentencing); Order at 2–3, *United States v. Lawrence*, No. 92-cr-35, (N.D.N.Y. July 10, 2013) (granting unopposed resentencing).

To the extent that federal and state courts have been disinclined to acknowledge *Miller*'s retroactivity, they misconstrue *Miller* to reach an incorrect outcome.

Additionally, the Department of Justice has repeatedly taken the position that it will not challenge *Miller*'s retroactivity and that it will affirmatively "advocate in favor of *Miller*'s retroactivity in cases on collateral review all across the country." *In re Morgan*, 717 F.3d at

32

1197 (Wilson, J., dissenting) (denying rehearing en banc). *See also*, Brief for the United States at 18, *Johnson v. United States*, No. 12-3744 (8th Cir. Feb. 22, 2013), J.A. 114; Brief for the United States at 6–18, *Williams v. United States*, No. 13-1731 (8th Cir. May 9, 2013), J.A. 124–36; Brief for the United States at 6–18, *Stone v. United States*, No. 13-1486 (2d Cir. May 30, 2013), J.A. 152–64.

These court decisions and the announced position of the Department of Justice are certainly persuasive authority that Mr. Sanchez urges this Court consider and ultimately follow when making a determination as to the retroactivity of *Miller*.

## CONCLUSION

It is clear from litigation occurring across the nation that there is an increasing consensus *Miller* applies retroactively, and principles of justice dictate that constitutional rights do not vary between states. Finding that *Miller* is retroactive will not eliminate the ability of a judge in Virginia to impose a discretionary sentence of life without parole on a juvenile offender, should a court determine that this sentence is appropriate after conducting the analysis *Miller* requires. In Mr. Sanchez's case, the sentencing court explicitly recognized that it lacked discretion to consider alternative sentences and, in fact, Mr. Sanchez's acceptance of responsibility and actions over the past fifteen years to better himself, his family, and those around him indicate that the imposition of a mandatory life-without-parole sentence was particularly inappropriate in this case.

For the foregoing reasons, the judgment of the district court should be reversed, Mr. Sanchez's petition for a writ of habeas corpus should be granted, and Mr. Sanchez's case should be remanded to Virginia state court for a new sentencing hearing consistent with the requirements set forth in *Miller v. Alabama*.

## REQUEST FOR ORAL ARGUMENT

Mr. Sanchez's appeal raises an important issue of constitutional law pertaining to the retroactive application of the Supreme Court's decision in *Miller*, which has not been previously decided by this Court. Mr. Sanchez believes that oral argument will aid the Court in its decisional process, and so requests oral argument.

Respectfully submitted,

 /s/ Carolyn M. Sweeney
CAROLYN M. SWEENEY
  *Counsel of Record*
JOSHUA C. TOLL
SARA A. SILVERSTEIN
SAMUEL E. DORAN
STEPHEN D. SALTARELLI*
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, D.C.  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
csweeney@kslaw.com

*Counsel for Petitioner-Appellant*

*\* Admitted only in Maryland; practice directly supervised by principals of the firm*

DATED: June 2, 2014

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, I hereby certify:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,415 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

 /s/ Carolyn M. Sweeney
Carolyn M. Sweeney
*Counsel for Petitioner-Appellant*

DATED: June 2, 2014

## CERTIFICATE OF SERVICE

I certify that, on this 2nd day of June, 2014, a true and correct copy of the foregoing brief was filed with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> VICTORIA JOHNSON
> OFFICE OF THE ATTORNEY
> GENERAL OF VIRGINIA
> 900 East Main Street
> Richmond, VA 23219-0000
> (804) 786-4073

/s/ Carolyn M. Sweeney
Carolyn M. Sweeney
*Counsel for Petitioner-Appellant*